IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| WATER DISTRICT NO. 1 OF JOHNSON COUNTY, KANSAS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:21-CV-02070-KHV-GEB |
| S.J. LOUIS CONSTRUCTION, INC., | ) ) | |
| Defendant. | ) ) | |
| ---------------------------------------------------- | ) | |
| S.J. LOUIS CONSTRUCTION, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | **ORAL ARGUMENT REQUESTED** |
| CORE & MAIN, LP, | ) ) | |
| and | ) ) | |
| MUELLER CO., LLC, | ) ) | |
| Third-Party Defendants. | ) ) | |
| ---------------------------------------------------- | ) | |

**MUELLER CO., LLC'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS COUNT TWO OF S.J. LOUIS CONSTRUCTION, INC.'S
FIRST AMENDED THIRD-PARTY COMPLAINT**

Third-Party Defendant Mueller Co., LLC ("Mueller") submits this Memorandum in Support of its Motion to Dismiss Count Two of S.J. Louis Construction, Inc.'s ("S.J. Louis") First Amended Third-Party Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

I. **NATURE OF THE MATTER**

Plaintiff Water District No. 1 of Johnson County, Kansas ("WaterOne") filed a Petition alleging defendant/third-party plaintiff S.J. Louis Construction, Inc. ("S.J. Louis") breached a construction contract with WaterOne by installing gate valves that do not properly function in WaterOne's water transmission pipelines. S.J. Louis has filed a First Amended Third-Party Complaint against Core & Main, LP ("Core & Main") and Mueller. Count Two of S.J. Louis's First Amended Third-Party Complaint is for implied contractual indemnity and is the *only* Count against Mueller. This count fails to state a legally cognizable claim because implied contractual indemnity arises only when the party seeking indemnity was sued for a tort. S.J. Louis, however, as stated above, was sued for breach of contract, not a tort. Additionally, S.J. Louis's attempt to recover economic damages from Mueller under a tort theory is barred by Kansas's economic loss doctrine. For these reasons, Count Two of S.J. Louis's First Amended Third-Party Complaint should be dismissed.

II. **STATEMENT OF THE FACTS**

On January 13, 2021, WaterOne filed a Petition against S.J. Louis in the District Court of Johnson County, Kansas. (Doc. 1-1). S.J. Louis timely removed the case to this Court. (Doc. 1). WaterOne alleges it and S.J. Louis entered into a contract for S.J. Louis to construct two large diameter water transmission lines, which included installing gate valves. (Doc. 1-1, ¶¶ 5–7). WaterOne's Petition contains a single count for *breach of contract*, alleging S.J. Louis installed gate valves that do not function pursuant to the terms of the contract. (*Id.* at ¶ 20). Section 15106 of the contract stated requirements for the gate valves. (Doc. 1-1, ¶ 7; Doc. 1-1, Exhibit 2). Specifically, the gate valves were required to be the gate manufacturer's "standard products" and conform to American Water Works Association ("AWWA") standard C-515. (Doc. 1-1, ¶ 7; Doc.

2

1-1, Exhibit 2, ¶¶ 1-2.01, 1-2.02).  WaterOne's Petition alleges the gate valves installed by S.J. Louis do not open or close under "system conditions," but it fails to identify any particular reason for the performance issues or defects in the gate valves.  (*Id.* at ¶ 1–21).

On May 24, 2021, S.J. Louis filed a Third-Party Complaint against Core & Main and Mueller alleging Core & Main supplied the gate valves and Mueller manufactured them.  (Doc. 26, ¶ 10).  The Third-Party Complaint included two counts: Count One for breach of contract against Core & Main, and Count Two for negligence against both Core & Main and Mueller.  (*Id.* at ¶¶ 13–21).  Mueller moved to dismiss S.J. Louis's negligence count on several grounds, including the tort claim was barred by Kansas's economic loss doctrine.  (Doc. 35; Doc. 36).  Tacitly recognizing the problems with its pleading, rather than oppose Mueller's motion, S.J. Louis withdrew the negligence claim, and it sought, and was granted, leave to file a First Amended Third-Party Complaint.  (Doc. 47; Doc. 48).

The First Amended Third-Party Complaint maintains Count One for breach of contract against Core & Main, but changes Count Two to a claim for implied contractual indemnity solely against Mueller.  (Doc. 50, ¶¶ 14–22).  Like its original Third-Party Complaint, S.J. Louis's First Amended Third-Party Complaint is legally deficient.  Accordingly, S.J. Louis's second attempt to bring a claim against Mueller should also fail.

### III.   QUESTIONS PRESENTED

Mueller's Motion to Dismiss presents the following questions: (1) Has S.J. Louis stated a legally cognizable claim for implied contractual indemnity?; and (2) Is S.J. Louis's claim for implied contractual indemnity barred by the economic loss doctrine?  The answer to these questions is "no" and "yes," respectively.

## IV.  STANDARD

To survive a Rule 12(b)(6) motion to dismiss, S.J. Louis "must allege sufficient facts to state a claim for relief plausible on its face." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).  This means S.J. Louis "must offer sufficient factual allegations to raise a right to relief above the speculative level." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotations omitted).  "A plausible claim includes facts from which [a court] may reasonably infer Defendant's liability." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).  "Plaintiffs must nudge the claim across the line from conceivable or speculative to plausible." *Id.*  "Allegations that are merely consistent with a defendant's liability stop short of that line." *Id.* (internal quotations omitted).

In determining whether a claim is plausible, "[l]abels, conclusions, formulaic recitations of elements, and naked assertions will not suffice." *Id.*  "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Id.*  "Conclusory allegations are not entitled to the assumption of truth." *Id.* (internal quotations omitted).  "In fact, [courts] disregard conclusory statements and look to the remaining factual allegations to see whether Plaintiffs have stated a plausible claim." *Id.*

Applying this standard, dismissal under Rule 12(b)(6) is proper where, as here, a claim at issue is not legally cognizable. *Meier v. Chesapeake Operating L.L.C.*, 778 Fed. App'x 561, 568 (10th Cir. 2019); *Bedenfield v. United Parcel Serv., Inc.*, No. 19-2658-SAC, 2020 WL 707797, at *1 (D. Kan. Feb. 12, 2020).  Dismissal is also appropriate under Rule 12(b)(6) when a claim is barred by the economic loss doctrine. *Kelley Metal Trading Co. v. Al-Jon/United, Inc.*, 812 F. Supp. 185, 188 (D. Kan. 1993).

V.   ARGUMENT

    A. **S.J. Louis cannot recover under an implied contractual indemnity theory from Mueller because WaterOne has sued S.J. Louis for breach of contract.**

S.J. Louis has failed to state a legally cognizable claim for implied contractual indemnity. Under Kansas law,[1] a claim for implied contractual indemnity "arises when one personally without fault is made to pay for the tortious acts of another." *U.S. Fid. & Guar. Co. v. Sulco, Inc.*, 939 F. Supp. 820, 825 (D. Kan. 1996). However, there can be no claim for implied contractual indemnity when the party seeking indemnity is held liable for a contract claim rather than a tort claim. *Edward Kraemer & Sons, Inc. v. City of Kan. City, Kan.*, 874 F. Supp. 332, 336 (D. Kan. 1995); *Nature's Share, Inc. v. Kutter Prods., Inc.*, 752 F. Supp. 371, 387 (D. Kan. 1990); *Haysville U.S.D. No. 261 v. GAF Corp.*, 666 P.2d 192, 199 (Kan. 1983). Simply put, "implied indemnity is best restricted to tort actions." *Edward Kraemer & Sons, Inc.*, 874 F. Supp. at 336.

The leading Kansas case establishing this element of implied contractual indemnity is *Haysville U.S.D. No. 261 v. GAF Corp.* 666 P.2d 192 (Kan. 1983). The *Haysville* case stemmed from a roofing project for a school district. *Id.* at 195. Defendant GAF's roofing material was used for the project, and it also entered into a contractual inspection agreement with the district. *Id.* After the project was complete, the roofs developed leaks, and the district sued GAF under tort theories and for breach of the inspection contract. *Id.* GAF joined the project architect, contractor, and another product manufacturer as third-party defendants under an indemnity theory related to the alleged breach of the inspection contract. *Id.* The third-party defendants moved for summary judgment arguing there was no viable implied indemnity cause of action against them. *Id.* at 197. The district court agreed and entered summary judgment. *Id.*

---

[1] In a diversity action, such as this one, the substantive law of the forum state applies *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011).

5

On appeal, the Kansas Supreme Court affirmed the grant of summary judgment. *Id*. at 203. The court framed the question as whether GAF's contract with the district could "create[] potential liability on behalf of the third-party defendants." *Id.* at 199.  Analyzing the issue, the court emphasized that GAF's theory was predicated on its contract with the school district, even though the third-party defendants were not parties to the contract. *Id.* The court also found relevant that the school district's claims were limited to "economic relief sought for GAF's breaches of [contract]." *Id.* at 199. Based on these facts, the court found GAF was improperly "attempting to apply comparative negligence and implied comparative indemnity, which are tort-based theories, to contract law." *Id.* at 201. Accordingly, the court agreed GAF could not attempt to shift its liability for breach of contract to others under an implied indemnity theory.

Several years later, this court relied on the *Haysville* holding in dismissing an implied contractual indemnity claim. *Edward Kraemer & Sons, Inc. v. City of Kan. City, Kan.*, 874 F. Supp. 332, 335–36 (D. Kan. 1995). In *Edward Kraemer*, the Kansas Department of Transportation ("KDOT") settled a contract claim brought by a construction company that arose due to delays in a KDOT bridge project. *Id.* at 334. After settling the underlying contract claim, KDOT sought to recover the settlement amount, under an implied-contractual indemnity theory, from another contractor that KDOT had hired, blaming the delays on that contractor. *Id.* The contractor moved to dismiss, arguing KDOT's claim was not cognizable under Kansas law, because KDOT was not held liable for a tort, but only for breach of contract causing purely economic damages. *Id.* at 336. The court agreed that implied contractual indemnity is "best restricted to tort actions" and granted the contractor's motion to dismiss because "KDOT cannot state a claim for implied indemnity under Kansas law." *Id. See also, e.g., Nature's Share, Inc. v. Kutter Prods., Inc.*, 752 F. Supp. 371, 387 (D. Kan. 1990) (holding Kansas law does not permit a party to seek implied contractual

6

indemnity "for its liability on a contract breach").

S.J. Louis's indemnity claim against Mueller requires the same result as *Haysville, Edward Kraemer*, and *Nature's Share*. The predicate for S.J. Louis's indemnity claim is WaterOne's cause of action against S.J. Louis for breach of contract.[2] (Doc. 1-1, ¶¶ 18–21; Doc. 50, ¶¶ 7, 12). No tort claims are alleged against S.J. Louis. Additionally, WaterOne only seeks economic damages, alleging the gate valves "do not function per the requirements of the Construction Contract." (Doc. 1-1, ¶ 15). Therefore, like the failed claims in *Haysville*, *Edward Kraemer*, and *Nature's Share*, S.J. Louis seeks to shift its contractual liability to Mueller under a theory of implied contractual indemnity. (Doc. 50, ¶¶ 19–22). However, Mueller was not a party to the WaterOne-S.J. Louis contract. (*Id.* at ¶¶ 14–18). Under these facts, Kansas law does not permit S.J. Louis to bring an implied contractual indemnity claim, and S.J. Louis's Count Two should be dismissed.

### B. S.J. Louis's claim against Mueller for implied contractual indemnity is barred by the economic loss doctrine.

Although the argument above is dispositive, S.J. Louis's indemnity claim against Mueller is further deficient. As the Court will recall, Mueller moved to dismiss S.J. Louis' original Third-Party Complaint, in part, because the economic loss doctrine bars tort claims for economic loss. (Doc. 35; Doc. 36). S.J. Louis responded to Mueller's original motion to dismiss by withdrawing its negligence claim. (Doc. 47). Now, despite abandoning its previous tort claim, S.J. Louis's First Amended Third-Party Complaint once again seeks recovery from Mueller for alleged tortious conduct concerning an economic loss. Like the abandoned negligence claim, S.J. Louis's second attempt to seek recovery from Mueller must fail.

---

[2] This Court may consider WaterOne's Petition in ruling on this Motion to Dismiss. While Rule 12(d) prohibits consideration of matters outside the pleadings on a Motion to Dismiss, WaterOne's Petition is a pleading rather than a matter outside the pleadings. "Pleadings are complaints and answers to complaints." *Rittgers v. Hale*, No. 17-4019-SAC-KGG, 2017 WL 9856734, at *2 (D. Kan. Apr. 14, 2017) (internal quotations omitted); *see also* Fed. R. Civ. P. 7(a).

"Under the economic loss doctrine, a plaintiff seeking recovery for economic losses only cannot proceed under theories sounding in tort." *Rand Constr. Co. v. Dearborn Mid-West Conveyor Co.*, 944 F. Supp. 2d 1042, 1062 (D. Kan. 2013). "In other words, where plaintiff has suffered no personal injuries or damage to other property, a cause of action based upon tort does not exist." *Id.* (internal quotations omitted). *Id.* "The economic loss doctrine is the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." *Id.* (internal quotations and alteration omitted). Economic loss "includes damages for inadequate value, costs of repair, replacement costs, and loss of use of the defective product." *Nw. Ark. Masonry, Inc. v. Summit Specialty Prods., Inc.*, 31 P.3d 982, 987 (Kan. App. 2001). "Generally, economic loss is a result of the failure of the product to perform to the level expected by the buyer, which is the core concern of traditional contract law." *Id.*

Without question, S.J. Louis's claim for implied contractual indemnity improperly seeks recovery from Mueller for economic loss under a theory sounding in tort. (Doc. 50, ¶¶ 1–23). Specifically, S.J. Louis alleges Mueller "was obligated to exercise a reasonable degree of care, skill, and knowledge" and, *if* its valves are determined to be defective, "Mueller breached its duty to exercise a reasonable degree of care, skill, and knowledge." (*Id*. at ¶¶ 20–21). By alleging Mueller may have breached a duty of reasonable care, S.J. Louis's claims clearly sound in tort. *Rand Constr. Co.*, 944 F. Supp. 2d at 1062. Moreover, the alleged damages are purely economic. There are no allegations of personal injury or damage to other property. Instead, the only damages referenced in Count Two are WaterOne's alleged damages. (Doc. 50, ¶ 22). In WaterOne's own words, it seeks damages because the gate valves "do not function per the requirements of the Construction Contract." (Doc. 1-1, ¶ 15). These are quintessential economic losses—"a result of

8

the failure of the product to perform to the level expected by the buyer." *See Nw. Ark. Masonry*, 31 P.3d at 987.

Accordingly, although it is calling its new theory "implied contractual indemnity," S.J. Louis has simply re-pleaded its withdrawn negligence claim.   As such, the economic loss doctrine bars this attempt to use a tort theory to recover alleged economic damages.  *Rand*, 944 F. Supp. 2d at 1062–63; *Kelley*, 812 F. Supp. at 188.  Therefore, S.J. Louis's Count Two should be dismissed.

## VI.  CONCLUSION

For the foregoing reasons, Mueller respectfully requests this Court dismiss S.J. Louis's Count Two for implied contractual indemnity against Mueller.

Respectfully submitted,

By:  /s/ *Jason Zager*
Jason Zager, #22586
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone:  (816) 474-6550
Facsimile:  (816) 421-5547
jzager@shb.com
*Attorney for Third-Party Defendant Mueller Co., LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

*/s/ Jason Zager*
*Attorney for Third-Party Defendant*
*Mueller Co., LLC*