IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| WATER DISTRICT NO. 1 OF JOHNSON COUNTY, KANSAS | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | |
| S.J. LOUIS CONSTRUCTION, INC., | § § | CIVIL ACTION NO. 2:21-CV-02070 |
| *Defendant/Third-Party Plaintiff,* | § § | |
| v. | § § | |
| CORE & MAIN, LP, and MUELLER CO., LLC. | § § § | |
| *Third-Party Defendants.* | § | |

### S.J. LOUIS CONSTRUCTION, INC.'S RESPONSE TO MUELLER CO., LLC'S MOTION TO DISMISS COUNT TWO OF S.J. LOUIS CONSTRUCTION, INC.'S FIRST AMENDED THIRD-PARTY COMPLAINT

S.J. Louis Construction, Inc. ("S.J. Louis") files this, its response to Third-Party Defendant Mueller Co., LLC's ("Mueller") Motion to Dismiss Count Two of S.J. Louis Construction's First Amended Third-Party Complaint [Dkt. 55] (the "Motion to Dismiss") and states as follows:

### STATEMENT OF THE NATURE OF THE MATTER

Plaintiff Water District No. 1 of Johnson County, Kansas ("WaterOne") asserts claims against S.J. Louis alleging that gate valves installed by S.J. Louis in the construction of two water transmission pipeline projects (the "Projects") are defective because they fail to operate under "system conditions." S.J. Louis was prime contractor but contracted with Core & Main, LP ("Core & Main"), who contracted with Mueller to manufacture and supply the gate valves at issue. In light of Mueller's significant involvement on the Projects, S.J. Louis has asserted a claim against Mueller for implied contractual indemnity. Mueller alleges that S.J. Louis' implied contractual

indemnity cause of action should be dismissed pursuant to Rule 12(6)(b) of the Federal Rules of Civil Procedure because: (1) the absence of a corresponding tort claim asserted by WaterOne against S.J. Louis purportedly precludes S.J. Louis' claim for implied contractual indemnity against Mueller; and (2) the economic loss doctrine allegedly bars S.J. Louis' implied contractual indemnity claim because it purportedly seeks to recover economic losses under a theory sounding in tort. Both of Mueller's arguments fail. Contrary to Mueller's assertions, Kansas law permits recovery under an implied contractual indemnity theory regardless of whether another tort claim has been asserted where (a) the party seeking indemnification is not attempting to assign only a percentage of responsibility to the party from whom indemnity is sought, and (b) a plausible claim of privity exists between the party that incurred damages and the party from whom indemnity is sought. As discussed below and set forth factually in S.J. Louis' Amended Third-Party Complaint, Mueller's relationship to and extensive involvement in the construction projects at issue create a plausible claim of implied privity between S.J. Louis and Mueller sufficient to give rise to S.J. Louis' claim pursuant Kansas law. Further, Mueller's second argument fails because S.J. Louis' implied indemnity claim is contractual, not a claim sounding in tort as Mueller suggests. Thus, S.J. Louis' implied contractual indemnity claim is not barred by the economic loss doctrine. Accordingly, Mueller's Motion to Dismiss should be denied.

## <u>QUESTIONS PRESENTED</u>

Mueller's Motion to Dismiss presents two questions: (1) Does the absence of a corresponding tort claim asserted by WaterOne against S.J. Louis preclude S.J. Louis' claim for implied contractual indemnity against Mueller?; and (2) Does the economic loss doctrine bar S.J. Louis' claim for implied contractual indemnity against Mueller? The answer to both questions is "no."

## FACTUAL BACKGROUND

On January 13, 2021, WaterOne filed its Petition against S.J. Louis alleging gate valves installed by S.J. Louis on the Projects are defective because they fail to operate under "system conditions." *See* Petition [Dkt. 1-1], at ¶¶, 8-21. As set forth in S.J. Louis' Amended Third-Party Complaint, to the extent WaterOne recovers because the gate valves are found to be defective because they fail to operate under system conditions, either Core & Main, who supplied the gate valves for the Projects pursuant to a contract with S.J. Louis, or Mueller, who manufactured the gate valves for the Projects, are responsible for any resulting damages, not S.J. Louis. *See* Amended Third-Party Complaint [Dkt. 50], at ¶¶ 9-10. Core & Main, an authorized distributor of Mueller products, contracted with Mueller, who was required to manufacture and supply gate valves pursuant to the construction contract and specifications. *See* Amended Third-Party Complaint [Dkt. 50], at ¶ 10; Core & Main's Answer and Crossclaims [Dkt. 57], at pp. 12-39. In light of WaterOne's allegations that the gate valves are defective because they fail to operate under "system conditions," S.J. Louis has asserted an implied contractual indemnity claim against Mueller, who was intimately involved in the Projects by driving the submittal of technical drawings and product information for the gate valves and responding to questions from the designer of record for the Projects. *Id.*, at ¶¶ 11, 19-22. Additionally, Mueller played a key role in the testing, startup, and commissioning of the pipelines, and investigation of WaterOne's claims regarding the gate valves. *Id.* Mueller now seeks to dismiss S.J. Louis' implied contractual indemnity claim under Rule 12(b)(6), as well as claims made by Core & Main for Mueller's breach of contract with Core & Main, to try to escape all potential liability in connection with the gate valves for which it may be solely responsible. *See* Motions to Dismiss [Dkt. 55]; [Dkt. 60].

## ARGUMENTS AND AUTHORITY

"A motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted." *Lone Star Indus., Inc. v. Horman Fam. Tr.*, 960 F.2d 917, 920 (10th Cir. 1992). "Dismissal is not proper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Young v. Green*, 79 F. App'x 416, 417 (10th Cir. 2003). When reviewing a motion to dismiss, a court must accept the facts alleged in the complaint as true and view the facts alleged and all reasonable inferences made therefrom in the light most favorable to the non-moving party. *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). Accordingly, a complaint need only contain factual allegations that, when accepted as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). For the reasons set forth below, based upon the factual allegations in the Amended Third-Party Complaint, which must be taken as true and considered in the light most favorable to S.J. Louis, S.J. Louis has stated a claim for relief which is plausible on its face. Accordingly, Mueller's Motion to Dismiss should be denied.

**A.     Mueller's Motion to Dismiss should be denied because the absence of a corresponding tort claim asserted by WaterOne against S.J. Louis does not preclude S.J. Louis' claim for implied contractual indemnity against Mueller.**

"The fundamental premise underlying an action for implied indemnity is the recognition that the law may impose liability upon a blameless party derivatively through another's conduct." *See* 42 C.J.S. Indemnity § 31. Here, WaterOne alleges that the gate valves installed on the Projects are defective because they do not operate under the required "system conditions." *See* Petition [Dkt. 1-1], at ¶¶, 8-21. Mueller and Core & Main were responsible for manufacturing and supplying the gate valves in conformance with the construction contract including the applicable specifications. *See* Amended Third-Party Complaint [Dkt. 50], at ¶ 10; Core & Main's Answer

and Crossclaims [Dkt. 57], at pp. 12-39. Therefore, if WaterOne's allegations are to be taken as true, then the failure of the gate valves to meet the "system conditions" is the result of either Mueller or Core & Main's failure to manufacture and supply gate valves pursuant to the construction contract, including the applicable specifications. Accordingly, either Core & Main, as supplier, or Mueller, as manufacturer, are responsible for the alleged damages asserted by WaterOne, in their entirety and should be the parties held ultimately responsible if the gate valves are found to be defective, not S.J. Louis.

To escape this responsibility, Mueller contends that, despite its intimate involvement on the Projects, it cannot be held responsible to S.J. Louis under a theory of implied contractual indemnity because WaterOne did not assert a cause of action against S.J. Louis sounding in tort. At the center of Mueller's argument is the Kansas Supreme Court's decision in *Haysville U.S.D. No. 261 v. GAF Corp.*, 666 P.2d 192 (Kan. 1983). All other cases cited by Mueller in support of its position derive their reasoning from *Haysville*. Yet, the *Haysville* decision is not applicable to this case.

In *Haysville*, a manufacturer of roofing materials entered into an inspection and service guarantee with a school district after the manufacturer oversaw and inspected the installation of roofing material for school buildings. *Haysville U.S.D. No. 261 v. GAF Corp.*, 666 P.2d 192, 195-197 (Kan. 1983). Leaks later became apparent, and the school district sued the manufacturer pursuant to the guarantee. *Id.* The manufacturer asserted third-party implied indemnity claims against the architect, contractor, and another manufacturer of products used in the roofing installation. *Id.*, at 197. On summary judgment, the district court ruled that "any liability [manufacturer] might have to the plaintiff under the inspection and service contract . . . is not for conduct claimed to have been done by any of the third-party defendants" and that that implied

comparative indemnity is not applicable in a contract action. *Id.*, 197-199. The Kansas Supreme Court ultimately upheld the district court's decision. *Id.*, at 203. The court focused on the specific purpose of the guarantee contract the manufacturer entered into with the plaintiff and found that allowing the manufacturer to withhold payment allegedly due pursuant to the guarantee contract "until the percentage of fault of all possible wrongdoers is determined in an action, would defeat the very purpose of the guarantee agreement." *Id.*, at 203. The court reasoned that if the manufacturer's theory were to prevail, then "parties that warrant, guarantee or insure under a contract would be entitled to withhold payments due under the contract until the rights and obligations of all parties, including those that are not contracting parties, are determined in one action." *Id.*, at 201.

Here, the construction contract between S.J. Louis and WaterOne is not a guarantee contract like the contract in *Haysville*. Holding Mueller, the manufacturer of the gate valves, liable if the valves are found to be defective does not defeat the purpose of S.J. Louis' contract for construction of water transmission pipelines because Mueller, as the downstream vendor responsible for providing the very gate valves at issue pursuant to the contract documents, was in the best position to ensure the gate valves were manufactured and provided to the Projects in conformance with those contracts based on its special knowledge and experience in manufacturing such valves and intimate involvement on the Projects. Mueller's obligation to S.J. Louis to manufacture and supply the gate valves at issue is wholly derivative of S.J. Louis's obligation to WaterOne to construct the Projects. As such, S.J. Louis is not attempting to allocate comparative fault for separate obligations S.J. Louis and Mueller owed to WaterOne relating to the gate valves like was analyzed in *Haysville*, but hold Mueller solely responsible because Mueller was

extensively involved in the selection, manufacture, and supply of the very gate valves at issue in this lawsuit, which it was required to do pursuant to the contract documents for the Projects.

In its motion, Mueller focuses on *Haysville* and a line of cases that relied on the *Haysville* decision to analyze the difference between tort and contract actions in relation to indemnity claims. Mueller suggests that these cases hold "there can be no claim for implied contractual indemnity when the party seeking indemnity is held liable for a contract claim rather than a tort claim." Memorandum in Support of Motion to Dismiss [Dkt. 56], at p. 5; *see generally, Nature's Share, Inc. v. Kutter Prods., Inc*., 752 F. Supp. 371 (D. Kan. 1990); *Edward Kraemer & Sons, Inc. v. City of Kan. City, Kan*., 874 F. Supp. 332 (D. Kan. 1995); *U.S. Fid. & Guar. Co. v. Sulco, Inc*., 939 F. Supp. 820 (D. Kan. 1996). However, while these cases acknowledge that implied indemnity may arise when a party is forced to pay for the tortious act of another, they do not, as Mueller suggests, preclude recovery under an implied contractual indemnity theory under the facts at issue in this case. Rather, taken together, the *Haysville* line of cases expresses two principles for the analysis of implied indemnity claims. First, assigning only a percentage of responsibility is not appropriate in actions based on contract law. Second, an implied contractual indemnity requires a plausible claim of privity between the party that incurred damages and the party from whom indemnity is sought.

In *Nature's Share*, a developer of bird feeders entered into an agreement with a manufacturer of corrugated boxes for the design of a bird feeder. *Nature's Share*, 752 F. Supp. at 375-76. The manufacturer then contracted with a packager to package the feeders and source bird seed. *Id*. The packager then went to a supplier of lawn and garden materials to supply the bird seed. *Id*., at 376. After the bird seed was found to be contaminated with insects, the developer sued the packager, skipping over its direct contract with the manufacturer, under various tort theories

and an implied contract theory. *Id.*, at 376-77. The packager sought indemnity from the upstream manufacturer of corrugated boxes, rather than the downstream supplier of the allegedly defective seeds, under an implied indemnity theory relating to its potential liability for the claims asserted against it by the developer. *Id.*, at 387. After the developer's tort claims against the packager were dismissed on summary judgment, the court dismissed the packager's implied indemnity claim against the manufacturer along with ruling on several other dispositive motions in pretrial proceedings, stating that the packager had failed to show how its agency theory supports indemnity, that it had not shown Kansas law permitted it to bring an implied indemnity action for its liability on a contract breach, and that if the packager had caused damage itself pursuant to its implied contract with the developer, the packager would not paying what another party ought to pay. *See id.* The court did not, however, analyze why the developer would have a viable breach of implied contract claim against the packager, which the court found existed, but the packager would not similarly have a valid implied contract claim for indemnity against the manufacturer. *See id.* Instead, the court relied on *Haysville* in stating inconclusively that "Kansas law **appears** to limit implied indemnity to tort actions." *Id.* (citing *Haysville*, 666 P.2d at 192) (emphasis added). Here, the facts are distinct from those at issue in *Nature's Share*. Unlike the packager who sought indemnity from the upstream manufacturer of corrugated boxes, instead of the downstream supplier of allegedly defective seed, S.J. Louis seeks indemnity from Mueller, who is the downstream manufacturer and party ultimately responsible for the allegedly defective gate valves, including the applicable specifications, if WaterOne's allegations are found to be correct.

In *Kraemer*, the Kansas Department of Transportation ("KDOT") entered into separate contracts with two different contractors in connection with the construction of a bridge. *Kraemer*, 874 F. Supp. at 334-34. The first contractor's delayed performance resulted in delays to the second

contractor's performance. *Id*. The second contractor pursued a delay claim seeking to recover additional compensation from KDOT pursuant to its direct contract, who then asserted a claim against the first contractor for breach of an express indemnification agreement in its written contract and alternatively a claim that a contract for indemnification should be implied in connection with the second contractor's delay claim. *Id*. The court dismissed KDOT's implied indemnity claim based on the context of a suit, relying on *Haysville*'s analysis of implied ***comparative*** indemnity. *Id.*, at 335-36. As with *Nature's Share*, the facts in *Kraemer* are distinct from this case. Notably, KDOT contracted separately with two different contractors for separate scopes of work in connection with the bridge construction project. Thus, unlike here, there is not a direct chain of privity between the first contractor who caused the delay and the second contractor who recovered damages from KDOT in connection with that delay. Also, KDOT had an express indemnification provision in its written contract with the first contractor, making the implied indemnity claim a superfluous alternate theory suggested by KDOT. Here, S.J. Louis does not have an express indemnity claim to rely on against Mueller.

In *Sulco*, an insurer sought to recover from its agent under a theory of implied contractual indemnity for liability incurred to an insured as a result of the agent's conduct. *Sulco*, 939 F. Supp. at 821-22. The agent moved for summary judgment on the grounds that Kansas' comparative negligence statute barred the insurer's claim, but the court denied the agent's motion, holding that the agent's reliance on the comparative negligence statute was misplaced because comparative fault principles do not apply to an implied contractual indemnity claim. *Id.*, at 823-25. Unlike *Nature's Share* and *Kraemer,* the *Sulco* court's decision recognized a distinction between implied ***comparative*** indemnity and implied ***contractual*** indemnity, which, as the court explained can exist if the plaintiff's liability is solely derivative of the wrongdoer's fault. *Id. Sulco* then analyzed the

insurer's claim based on what it interpreted as underlying allegations the agent acted negligently. *Id*. In *Sulco*, as in *Nature Share*, the agent was not a downstream supplier of product to the insurer as Mueller is to S.J. Louis is in this case. Instead, the insurer itself was the ultimate supplier of the product, the insurance policy, that was the subject of the dispute and sought indemnity from the agent for the agent's misrepresentations. In this case, Mueller's scope of work and conduct in completing that scope of work, as alleged in S.J. Louis's Amended Third-Party Complaint, is not only the subject of this dispute, but impliedly promised to S.J. Louis that Mueller would supply the gate valves in accordance with the construction contract including the specifications for the gate valves. Those implied promises sound in contract, not in tort.

On different facts from *Sulco*, this district found in a case more recent than the *Haysville* line of cases cited by Mueller that an underlying agency contract can give rise to a claim for implied contractual indemnity sounding in contract. *See Unified Sch. Dist. 467 v. Leland A. Gray Architects, LLC*, 112 F. Supp. 3d 1223, 1228–31 (D. Kan. 2015). The circumstances under which *U.S.D. 467*, which Mueller did not cite, analyzed this distinction, which Mueller did not cite, are more similar to this case than those in the *Haysville* line of cases. In *U.S.D. 467*, a school district owner contracted with a prime contractor to install HVAC systems for two school buildings. *Id.*, at 1225. The prime contractor then contracted with a supplier to supply the HVAC systems that were manufactured by an HVAC manufacturer. *Id.* After defects with the HVAC systems became apparent, the owner sued the prime contractor for breach of contract, breach of warranty, and negligence. *Id.* The prime contractor joined the supplier and the manufacturer as third-party plaintiffs, asserting claims including a breach of contract claim against the supplier and implied warranty and implied indemnity claims against the manufacturer on the basis that the manufacturer's level of involvement on the project should permit the prime contractor to pass its

liability to the owner downstream to the manufacturer. *Id.* at 1225-26. The court explained that implied comparative indemnity and implied contractual indemnity are distinguishable because implied comparative indemnity is an equitable remedy available to a tortfeasor among other tortfeasors, who by settling or paying a judgment, pays the other tortfeasors' share of liability, whereas implied contractual indemnity arises when a party's conduct creates an implied contractual relationship that allows a party without fault to recover when that party is compelled to pay for the conduct of the wrongdoer. *See id.*

Although the owner had asserted a tort claim against the prime contractor in *U.S.D. 467*, that fact was not a basis in the court's opinion in determining whether the prime contractor's implied contractual indemnity claim was valid. *See id.*, at 1226-30. Instead, it found that since the manufacturer was alleged to be involved in the project to a greater extent than a mere seller due to its active role in the installation, inspection, and servicing of the HVAC systems, that it had a contractual implied indemnity obligation to the prime contractor, even though the prime contractor was not in direct privity with the manufacturer. *Id.* at 1227-28. Thus, the court held that these alleged facts were sufficient to demonstrate that an implied contractual relationship between the prime contractor and manufacturer existed even though there was not direct express privity between those parties. *Id.* The court further noted the manufacturer was considered to be in privity with the prime contractor because the supplier with whom the prime contractor expressly contracted was an authorized dealer of the manufacturer's HVAC products, implicating the manufacturer based on principles of agency. *Id.*, at 1227-29. As such, the court concluded the manufacturer could plausibly be liable for a potential judgment against the prime contractor under a theory of implied contractual indemnity. Accordingly, the court denied the manufacturer's motion to dismiss. *Id.* at 1229-31.

Here, like the manufacturer in *U.S.D. 467*, Mueller had extensive involvement beyond just the manufacture of the gate valves. *See* Amended Third-Party Complaint [Dkt. 50], at ¶ 11. Mueller was actively involved in the submittal process for the gate valves by providing technical drawings and responding to questions from the designer of record for the Projects. *Id.* It also played a key role in the testing, startup, and commissioning of the pipelines and investigation of WaterOne's claims regarding the gate valves. *Id.* Thus, S.J. Louis's claims do not sound in tort as product liability, but instead in contract based on the implied promises made by Mueller to S.J. Louis based on Mueller's conduct and involvement during the Projects. Further, S.J. Louis's contractual relationship with Mueller giving rise to its indemnity cause of action is evidenced, just as the HVAC systems in *U.S.D. 467*, by the fact the allegedly defective gate valves were supplied to S.J. Louis by Core & Main, who was an authorized distributor of Mueller products. As a result, following the court's reasoning in *U.S.D. 467*, Mueller's relationship to the Projects creates a plausible claim of privity between S.J. Louis and Mueller giving rise to S.J. Louis' claim. Accordingly, *U.S.D. 467's* analysis should govern this case indicating the Court should find that Mueller's Motion to Dismiss should be denied.

### B. The economic loss doctrine does not apply because implied indemnity claims are treated as contractual under Kansas law.

Mueller alleges that economic loss doctrine bars S.J. Louis' implied contractual indemnity claim because it purportedly seeks to recover economic losses under a theory sounding in tort. As discussed above, S.J. Louis' claim is rooted in contract, not tort. Furthermore, implied contractual indemnity is treated as a contractual claim in Kansas. *See St. Francis Reg'l Med. Ctr., Inc. v. Critical Care, Inc*., 997 F. Supp. 1413, 1433 (D. Kan. 1997) (stating, with respect to an implied indemnity claim, "[i]n Kansas, indemnity claims are considered contractual."); *Kennedy v. City of Sawyer*, 618 P.2d 788, 799 (Kan. 1980) ("indemnity is a creature of contract"). Courts have

confirmed this when analyzing implied contractual indemnity claims in the context of the application of the statute of limitations by applying the limitations period for non-written contracts rather than the period for tort claims. *See St. Francis*, 997 F. Supp. at 1433; *Unified Sch. Dist. 467*, 112 F. Supp. 3d at 1231; *Sulco*, 939 F. Supp. at 825–26 (D. Kan. 1996). Thus, as a contractual claim, not a tort claim, the economic loss doctrine does not apply to S.J. Louis' implied contractual indemnity claim. Accordingly, Mueller's Motion to Dismiss should be denied.

## <u>CONCLUSION</u>

S.J. Louis has pled in its Amended Third-Party Complaint that Mueller is responsible for the alleged damages by WaterOne arising from certain gave valves that Mueller manufactured and supplied to the Projects. S.J. Louis seeks to recover from Mueller under a theory of implied contractual indemnity based on the implied promises Mueller made through its extensive involvement in the manufacture and supply, and even investigation of WaterOne's claims, relating to the gate valves at issue. Furthermore, based on agency principles, since Core & Main was an authorized dealer of Mueller's products, S.J. Louis is in privity directly with Mueller based on *U.S.D. 467* giving rise to S.J. Louis' claim that sounds in contract. As the court in *U.S.D. 467* found, on facts substantially similar to this case, a viable claim for implied contractual indemnity exists. The court in *U.S.D. 467* did not require that the owner separately assert a claim sounding in tort for such a claim to exist, as Mueller argues. Therefore, since S.J. Louis's allegations must be accepted as true and construed in the light most favorable to S.J. Louis in determining Mueller's motion to dismiss, that motion should be denied because S.J. Louis has asserted a viable claim as a matter of law.

Respectfully submitted,


DYSART TAYLOR COTTER McMONIGLE &
BRUMITT, P.C.

*/s/ Carol Z. Smith*
CAROL Z. SMITH                    KS#13276
4420 Madison Avenue Suite 200
Kansas City, MO 64111
(816) 931-2700
Fax (816) 931-7377
csmith@dysarttaylor.com

AND

CLARK HILL STRASBURGER


*/s/ Phillip W. Pemberton*
PHILLIP W. PEMBERTON              KS#25920
2600 Dallas Parkway, Suite 600
Frisco, TX 75034
Telephone:    (469) 287-3956
Facsimile:    (469) 227-6596
ppemberton@clarkhill.com

AND

S.J. LOUIS CONSTRUCTION, INC.

PHILIPS J. VALLAKALIL             (Pro Hac Vice)
TX#24086840
520 S. 6th Avenue
Mansfield, TX 76063
(817) 477-0320
Fax (817) 477-0552
philipsv@sjlouis.com

ATTORNEYS FOR DEFENDANT
S.J. LOUIS CONSTRUCTION, INC.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been forwarded to all counsel of record on this 11th day of August, 2021, via electronic service.

Eric Arner
Darci Meese
WATER DISTRICT NO.1 OF
JOHNSON COUNTY, KANSAS
10747 Renner Boulevard
Lenexa, Kansas 66219
earner@waterone.org
dmeese@waterone.org

and

Michelle R. Stewart
HINKLE LAW FIRM
8711 Penrose Lane, Suite 400
Lenexa, Kansas 66219
mstewart@hinklaw.com

ATTORNEYS FOR PLAINTIFF

Robert J. Golterman
LEWIS RICE, LLC
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
rgolterman@lewisrice.com

and

Scott A. Wissel
LEWIS RICE, LLC
1010 Walnut, Suite 500
Kansas City, Missouri 64106
sawissel@lewisricekc.com

ATTORNEYS FOR THIRD-PARTY
DEFENDANT CORE & MAIN, LP

Jason M. Zager
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri 64108
jzager@shb.com

ATTORNEY FOR THIRD-PARTY
DEFENDANT MUELLER CO., LLC

*/s/ Phillip W. Pemberton*
Phillip W. Pemberton