IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WATER DISTRICT NO. 1 OF JOHNSON COUNTY, KANSAS,<br><br>Plaintiff,<br><br>v.<br><br>S.J. LOUIS CONSTRUCTION, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION<br>)<br>)    No. 21-2070-KHV<br>)<br>)<br>) |
| S.J. LOUIS CONSTRUCTION, INC.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>CORE & MAIN, LP, and MUELLER CO., LLC,<br><br>Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

Water District No. 1 of Johnson County, Kansas ("WaterOne") filed suit against S.J. Louis Construction, Inc. ("S.J. Louis") for breach of contract, alleging that S.J. Louis installed gate valves that do not function properly in WaterOne's water transmission pipelines. S.J. Louis filed a third-party complaint against its subcontractor, Core & Main, LP, and the supplier of the gate valves, Mueller Co., LLC. S.J. Louis asserts a breach of contract claim against Core & Main and a claim for implied contractual indemnity against Mueller. Core & Main has filed cross-claims against Mueller alleging that if it is liable to S.J. Louis, Mueller must indemnify Core & Main under theories of express indemnification and express warranty. This matter is before the Court on Mueller Co., LLC's Motion To Dismiss Count Two Of S.J. Louis Construction, Inc.'s First

Amended Third-Party Complaint (Doc. #55) filed July 21, 2021 and Mueller Co., LLC's Motion To Dismiss Core & Main's Cross-Claims (Doc. #60) filed July 29, 2021. For reasons stated below, the Court overrules Mueller's motions.

## **Legal Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. at 678. Plaintiffs make a facially plausible claim when they plead factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Id. However, plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleaders are entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242,

1248 (10th Cir. 2008).

## Factual Background

On February 9, 2021, in the District Court of Johnson County, Kansas, WaterOne filed a Petition against S.J. Louis for breach of contract. S.J. Louis timely removed the case to this Court. WaterOne alleges that S.J. Louis installed defective gate valves on two water transmission lines. S.J. Louis had Core & Main supply the gate valves that Mueller had manufactured. Mueller asks the Court to dismiss S.J. Louis's third-party claim and Core & Main's cross-claims. To determine whether S.J. Louis and Core & Main have each stated claims against Mueller, the Court sets forth the allegations of S.J. Louis's third-party complaint and Core & Main's cross-claims.

**I.     S.J. Louis's Third-Party Complaint Against Mueller And Core & Main**

S.J. Louis's third-party complaint alleges as follows:

In March of 2014, under a contract, S.J. Louis agreed to construct two large diameter water transmission pipelines for WaterOne. S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint (Doc. #50), ¶ 7. On June 25, 2015, under a Purchase Agreement, Core & Main agreed to supply S.J. Louis with various items including in-line gate valves for construction of the pipelines. Id., ¶¶ 7–8. Under the Purchase Agreement, Core & Main agreed to supply S.J. Louis valves that conformed to the requirements of the construction contract with WaterOne. Id., ¶¶ 9, 15. Core & Main also agreed to indemnify and hold S.J. Louis harmless from all claims for items that Core & Main supplied for the pipelines. Id., ¶ 9.

Core & Main, an authorized distributor of Mueller products, supplied gate valves that Mueller had manufactured. Id., ¶ 10. As part of the construction of the pipelines, Mueller provided technical data and other documentation to Black & Veatch Corporation, WaterOne's designer for the pipelines. Id., ¶ 11. Mueller also assisted in the testing, start up and commissioning of the

pipelines.  Id.  When WaterOne complained that the gate valves did not work properly, Mueller investigated the complaints.  Id.

In WaterOne's complaint, it alleges that S.J. Louis breached a construction contract because the "gate valves that were manufactured by Mueller, supplied by Core & Main, and installed by S.J. Louis" do not function as required under the contract, i.e. they do not open or close under "system conditions."  Id., ¶ 12.  Water One alleges that its damages include damage to the pipelines.  Id.

To the extent WaterOne suffered damages, S.J. Louis asserts that it is entitled to recover any such damages and attorney fees from Core & Main, as the supplier of the valves, and Mueller, as the manufacturer of the valves.  Id., ¶¶ 13, 17.  As to Core & Main, S.J. Louis asserts a claim for breach of contract.  Specifically, S.J. Louis alleges that to the extent that WaterOne suffered damages, Core & Main necessarily breached the Purchase Agreement which required it to supply gate valves that conformed to the requirements of the construction contract.  Id., ¶¶ 16, 18.  As to Mueller, S.J. Louis asserts a claim for implied contractual indemnity.  S.J. Louis alleges that to the extent that WaterOne suffered damages, Mueller necessarily failed to exercise reasonable care, skill and knowledge in the manufacture of the valves which were to conform to the requirements of the construction contract between WaterOne and S.J. Louis.  Id., ¶¶ 19–21.

**II.     Core & Main's Cross-Claims Against Mueller**

Core & Main's cross-claims allege as follows:

For 2014, under a Supplier Agreement, Mueller agreed to manufacture and provide to Core & Main various products including gate valves.  Core & Main LP's Answer To S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint And Cross-Claims Against Third-Party Defendant Mueller Co., LLC (Doc. #57) filed July 21, 2021, Cross-Claims ¶ 15.  The Supplier

Agreement incorporated by reference the SBA Terms and Conditions, which provided as follows:

> Supplier [Mueller] shall indemnify, defend, and hold [Core & Main] (which for purposes of Sections 6 and 7 of these SBA Terms and Conditions shall include any affiliates or associates and their respective directors, officers, employees, and agents) harmless from and against any and all claims, lawsuits, judgments, losses, product recalls, civil penalties or actions, costs, liabilities, damages, and expenses (including attorneys' and accountants' fees and expenses) by any person, corporation, government, governmental agency, class, or any other entity whatsoever, which arise from and/or in any way relate to any:
>
> (a) acts or omissions of Supplier, its employees and agents, contractors, subcontractors and/or any other persons for whose conduct it may be or is alleged to be legally responsible; (b) products provided by Supplier hereunder or their use; . . .

Id., ¶ 20. The SBA Terms and Conditions also state that if Mueller fails to assume its defense and indemnity obligations within ten days after notice thereof, Core & Main may proceed with its own defense and require Mueller to reimburse and indemnify it for any and all losses and expenses including attorneys' fees that it incurs. Id., ¶ 26.

Core & Main's cross-claims incorporate by reference S.J. Louis's third-party complaint. Id., ¶ 9. Core & Main asserts that under the SBA Terms and Conditions, the claims that S.J. Louis asserted in the third-party complaint against Core & Main constitute potential claims, losses, liabilities, damages and expenses which (a) arise from or relate to the acts or omissions of Mueller or its employees or agents or (b) arise from or relate to products provided by Mueller under the Agreements. Id., ¶¶ 21–22. Accordingly, Core & Main alleges that Mueller is contractually obligated to defend, indemnify and hold Core & Main harmless from any and all claims, losses, liabilities or damages arising from S.J. Louis's third-party complaint. Id., ¶ 23. Core & Main has demanded that Mueller defend, indemnify and hold Core & Main harmless with respect to such claims, but Mueller has refused to do so. Id., ¶¶ 24–25. Core & Main asserts that based on Mueller's breach of the Supplier Agreement, it has suffered damages including its past and future

legal costs and attorney fees in responding to S.J. Louis's third-party complaint and potential liability on the claims that S.J. Louis has asserted.  Id., ¶¶ 27–28.

Core & Main also asserts that Mueller breached the express warranties, representations and guarantees that it made to Core & Main and/or S.J. Louis and/or WaterOne.  Id., ¶ 38.  Specifically, under the Supplier Agreement, Mueller expressly warranted, represented and guaranteed to Core & Main, S.J. Louis and WaterOne as follows:

> Supplier warrants, represents and guarantees to [Core & Main] and to all persons purchasing or using the products (whether purchased from [Core & Main], from any third party to which [Core & Main] sells the products, or otherwise) that: (a) all products will be furnished in accordance with these SBA Terms and Conditions and will be of the quality, form, fit, function, size and dimensions ordered under the [purchase order]; (b) all products will be new products of the latest design or model in conformity with all plans, specifications, performance standards, drawings, control samples and other data incorporated as part of the [purchase order]; (c) all products will be of good quality, merchantable, free and clear of liens and encumbrances, and free from all defects in material and workmanship and shall be fit and appropriate for their intended purposes; and (d) the design, manufacture, labels, packaging, instructions, disclaimers and warnings concerning all products will comply with these SBA Terms and Conditions and all applicable Laws.

Id., ¶ 33.  In deciding whether to agree to the Supplier Agreement, Core & Main relied on the foregoing warranties, representations and guarantees.  Id., ¶ 34.

Mueller manufactured and provided gate valves that allegedly (a) were "not of the quality, form, fit, function, size, or dimensions required," (b) "did not conform to all plans, specifications, performance standards, drawings, control samples, or other data incorporated as required," and/or (c) were "not of good quality or merchantable, were not free from all defects in material and workmanship, and were not fit and appropriate for their intended purposes."  Id., ¶¶ 35–37.  Core & Main notified Mueller that the gate valves were allegedly defective or otherwise did not conform to all applicable plans and specifications, but Mueller failed to cure or correct such defects and nonconformities despite having a reasonable opportunity to do so.  Id., ¶ 39.

**Analysis**

Kansas recognizes three types of indemnity claims: (1) express contractual indemnity based on a contract of indemnity such as a hold harmless agreement, (2) implied contractual indemnity where one is compelled to pay what another party ought to pay and (3) comparative implied indemnity where one of multiple tortfeasors pays another's share of liability. Poindexter v. Morse Chevrolet, Inc., 171 P.3d 285 (Table), 2007 WL 4246860, at *3 (Kan. Ct. App. 2007); see Schaefer v. Horizon Bldg. Corp., 26 Kan. App. 2d 401, 403, 985 P.2d 723, 725 (1999) (comparative implied indemnity); Haysville U.S.D. No. 261 v. GAF Corp., 233 Kan. 635, 641–42, 666 P.2d 192, 198–99 (1983) (express and implied contractual indemnity).

As noted above, Core & Main asserts claims against Mueller for express contractual indemnity and express warranty. S.J. Louis asserts a single claim against Mueller for implied contractual indemnity. Mueller seeks to dismiss the claims of both Core & Main and S.J. Louis.

**I.    Core & Main's Cross-Claims Against Mueller**

   A.    Express Indemnification Claim

Mueller argues that Core & Main has not stated a plausible claim for express indemnification because it has not pleaded facts that show how S.J. Louis's breach of contract claim arises from or relates to Mueller's acts, omissions or products. Mueller Co., LLC's Memorandum In Support Of Its Motion To Dismiss Core & Main's Cross-Claims (Doc. #61) filed July 29, 2021 at 5–6.

Core & Main alleges that under the Supplier Agreement and SBA Terms and Conditions, Mueller agreed to indemnify Core & Main for claims "which arise from and/or in any way relate to any: (a) acts or omissions of [Mueller], its employees and agents, contractors, subcontractors and/or any other persons for whose conduct it may be or is alleged to be legally responsible;

(b) products provided by [Mueller] hereunder or their use." Core & Main LP's Answer To S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint And Cross-Claims Against Third-Party Defendant Mueller Co., LLC (Doc. #57), Cross-Claims ¶ 20.  Core & Main's cross-claims incorporate by reference S.J. Louis's third-party complaint which alleges that (1) Core & Main, an authorized distributor of Mueller products, supplied gate valves that Mueller had manufactured, (2) as part of the construction of the pipelines, Mueller provided technical data and other documentation to Black & Veatch Corporation, WaterOne's designer for the pipelines, (3) Mueller also assisted in the testing, start up and commissioning of the pipelines and (4) when WaterOne complained that the gate valves were not working properly, Mueller investigated the complaints.  S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint (Doc. #50), ¶¶ 10–11.  Core & Main's cross-claims also recite WaterOne's allegation in the complaint that S.J. Louis breached a construction contract because the "gate valves that were manufactured by Mueller, supplied by Core & Main, and installed by S.J. Louis" do not function as required under the contract, i.e. they do not open or close under "system conditions."  Id. ¶ 12.

Core & Main's factual allegations are somewhat vague as to how S.J. Louis's claims arise from or relate to specific acts or omissions of Mueller.  Even so, at a minimum, Core & Main has alleged that S.J. Louis's claims "arise from" or in some way "relate" to Mueller's products, i.e. its gate valves.  Accordingly, Core & Main has sufficiently stated a plausible claim for breach of the express indemnification agreement.  The Court therefore overrules Mueller's motion to dismiss this claim.

  B. Express Warranty Claim

Mueller argues that Core & Main has not stated a plausible claim for breach of express warranty because it has not pleaded facts that the gate valves were defective.  Mueller Co., LLC's

Memorandum In Support Of Its Motion To Dismiss Core & Main's Cross-Claims (Doc. #61) at 7–8. Specifically, Mueller argues that Core & Main has not identified a specific defect in the gate valves that caused the alleged failure to open or close under system conditions or how the valves did not conform to specific plans or specifications. Mueller Co., LLC's Motion To Dismiss Core & Main's Cross-Claims (Doc. #74) filed September 26, 2021 at 5.

On an express warranty claim, Kansas law does not demand proof of a specific defect. Voelkel v. Gen. Motors Corp., 846 F. Supp. 1468, 1477–78 (D. Kan. 1994); see Cantrell v. Amarillo Hardware Co., 226 Kan. 681, 685, 602 P.2d 1326, 1330–31 (1979). Instead, plaintiff must show that the product failed to perform as expressly warranted and that this breach of warranty caused its injury. See id.

Here, Core & Main alleges that under the Supplier Agreement, Mueller warranted that its products will be "in conformity with all plans [and] specifications" and will be "free from all defects in material and workmanship and shall be fit and appropriate for their intended purposes." Core & Main LP's Answer To S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint And Cross-Claims Against Third-Party Defendant Mueller Co., LLC (Doc. #57), ¶ 33. Core & Main also alleges that Mueller manufactured and provided gate valves that allegedly (a) were "not of the quality, form, fit, function, size, or dimensions required," (b) "did not conform to all plans, specifications, performance standards, drawings, control samples, or other data incorporated as required," and/or (c) were "not of good quality or merchantable, were not free from all defects in material and workmanship, and were not fit and appropriate for their intended purposes." Id., ¶¶ 35–37. Specifically, Core & Main alleges that WaterOne asserts that the "gate valves that were manufactured by Mueller, supplied by Core & Main, and installed by S.J. Louis" do not function as required under the contract, i.e. they do not open or close under "system

conditions." S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint (Doc. #50) (incorporated by reference in Core & Main's cross-claims), ¶ 12.

As explained above, Core & Main need not prove a specific defect to prevail on its express warranty claim. In addition, its claim against Mueller is contingent on a finding (on WaterOne's claim against S.J. Louis) that the gate valves were defective. Core & Main has identified the general nature of the defect in the gate valves as alleged by WaterOne, i.e. the failure of the valves to open or close under system conditions, which gives Mueller fair notice of the grounds upon which Core & Main's claim rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (pleadings need only give defendant fair notice of what claim is and grounds upon which it rests). Core & Main does not need to identify the precise cause of the defect alleged by WaterOne. The Court therefore overrules Mueller's motion to dismiss Core & Main's claim for breach of express warranty.

## II.   S.J. Louis's Third-Party Complaint Against Mueller

Mueller argues that S.J. Louis cannot state a claim for implied contractual indemnity because (1) the economic loss doctrine precludes such a claim and (2) S.J. Louis cannot seek implied indemnity for liability that it may incur on a breach of contract claim.

### A.   Economic Loss Doctrine

Mueller argues that the economic loss doctrine precludes a claim for implied contractual indemnity because such a claim sounds in tort. Mueller Co., LLC's Memorandum In Support Of Its Motion To Dismiss Count Two Of S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint (Doc. #56) filed July 21, 2021 at 8. Kansas courts have adopted the economic loss doctrine, which generally prohibits a commercial buyer of defective goods from suing in negligence or strict liability where the only injury consists of damage to the goods themselves. Koss Const. v. Caterpillar, Inc., 25 Kan. App. 2d 200, 207, 960 P.2d 255, 260 (1998). In Kansas,

however, an implied contractual indemnity claim is considered contractual in nature.[1] Accordingly, the economic loss doctrine does not preclude S.J. Louis from asserting such a claim for purely economic losses.  The Court overrules Mueller's motion to dismiss on this ground.

### B. Implied Indemnity For Damages Based On Breach Of Contract

As explained above, WaterOne asserts a single claim for breach of contract against S.J. Louis.  Mueller argues that S.J. Louis cannot recover under an implied contractual indemnity theory because S.J. Louis seeks indemnity for potential liability on a contract claim, not a tort claim.  Mueller Co., LLC's Memorandum In Support Of Its Motion To Dismiss Count Two Of S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint (Doc. #56) at 5.  S.J. Louis asserts that Kansas law permits implied contractual indemnity claims if the one seeking indemnity is without fault, regardless of the nature of the underlying claim.

An implied contractual indemnity claim "*usually* arises when one personally, without fault, is made to pay for a tortious act of another." Haysville, 233 Kan. at 642, 666 P.2d at 199 (emphasis added); see Med James, 31 Kan. App. 2d at 101, 61 P.3d at 95 (weighing of relative fault of parties does not apply to implied contractual indemnity because one seeking indemnity must be without

---

[1] See Med James, Inc. v. Barnes, 31 Kan. App. 2d 89, 99, 61 P.3d 86, 94 (2003) (implied contractual indemnity claim subject to statute of limitations for "actions upon contracts, obligations or liabilities expressed or implied but not in writing") (citing K.S.A. § 60–512); St. Francis Reg'l Med. Ctr., Inc. v. Critical Care, Inc., 997 F. Supp. 1413, 1433 (D. Kan. 1997) (because indemnity claims considered contractual, statute of limitations on unwritten contracts applies); U.S. Fid. & Guar. Co. v. Sulco, Inc., 939 F. Supp. 820, 825 (D. Kan. 1996) (even where right to implied contractual indemnity arises out of defendant's negligence, tort statute of limitations does not apply because indemnity claim wholly distinct from underlying circumstances which give rise to right of indemnity); see also Lico Steel, Inc. v. Harris Constr. Co., Inc., No. 71,647, 1996 WL 35069775, at *10 (Kan. Ct. App. Mar. 15, 1996) (implied contractual indemnity arises from "obligations flowing between indemnitor and indemnitee, rather than being founded upon a tort or upon any duty which the indemnitor owes to an injured third party;" theory is "without reference to distinctions between primary and secondary, or active and passive, negligence") (quoting 42 C.J.S., Indemnity § 31).

fault). Even so, Kansas courts appear to permit an implied contractual indemnity claim without reference to whether the underlying claim was brought in contract or tort. See U.S. Fid. & Guar. Co. v. Sulco, Inc., 939 F. Supp. 820, 825 (D. Kan. 1996) (even where right to implied contractual indemnity arises out of defendant's negligence, tort statute of limitations does not apply because indemnity claim "wholly independent as a cause of action from the transaction or situation which gave rise to the right of indemnity") (citation omitted); see also Lico Steel, Inc. v. Harris Constr. Co., Inc., No. 71,647, 1996 WL 35069775, at *10 (Kan. Ct. App. Mar. 15, 1996) (implied contractual indemnity arises from the "obligations flowing between indemnitor and indemnitee, rather than being founded upon a tort or upon any duty which the indemnitor owes to an injured third party") (quoting 42 C.J.S., Indemnity § 31).

In Unified Sch. Dist. 467 v. Leland A. Gray Architects, LLC, 112 F. Supp. 3d 1223 (D. Kan. 2015), the Honorable Richard D. Rogers found that an implied contractual indemnity claim could be asserted for both underlying contract and tort claims. There, the school district filed an action against the architect and the general contractor for design and construction defects in the HVAC systems installed in two school buildings. Id. at 1225. As to the general contractor, the school district asserted claims for breach of contract, breach of warranty and negligence. Id. In turn, the general contractor filed a third-party complaint against the HVAC supplier and the HVAC manufacturer. Id. As to the manufacturer, the general contractor asserted a claim for implied contractual indemnity because (1) the manufacturer was involved in the "design and installation" and the "inspection and service" of the HVAC systems and had made certain promises and affirmations in connection with the sale of the equipment and (2) the general contractor had purchased the HVAC units from the manufacturer's authorized dealer. Id. at 1227–28. Judge Rogers held that under either factual scenario, the general contractor had sufficiently alleged a

relationship with the manufacturer to state a plausible claim for implied contractual indemnity.[2] Id.

Here, S.J. Louis alleges that (1) Mueller manufactured the allegedly defective gate valves, (2) as part of the construction of the pipelines, Mueller provided technical data and other documentation to Black & Veatch Corporation, WaterOne's designer for the pipelines, (3) Mueller assisted in the testing, start up and commissioning of the pipelines and (4) when WaterOne complained that the gate valves were not working properly, Mueller investigated the complaints. S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint (Doc. #50), ¶¶ 11–12. Like the general contractor in Unified Sch. Dist. 467, S.J. Louis has alleged sufficient facts that go beyond the mere relationship between a consumer and manufacturer and plausibly establish an implied contractual relationship with Mueller. See Unified Sch. Dist. 467, 112 F. Supp. 3d at 1227–28. Accordingly, the Court overrules Mueller's motion to dismiss S.J. Louis's claim for implied contractual indemnity.

**IT IS THERFORE ORDERED** that Mueller Co., LLC's Motion To Dismiss Count Two Of S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint (Doc. #55) filed July 21, 2021 is **OVERRULED**.

**IT IS FURTHERED ORDERED** that Mueller Co., LLC's Motion To Dismiss Core & Main's Cross-Claims (Doc. #60) filed July 29, 2021 is **OVERRULED**.

---

[2] Mueller asserts that in Unified Sch. Dist. 467, the school district sued the general contractor in tort, Mueller Co., LLC's Reply In Support Of Its Motion To Dismiss Count Two Of S.J. Louis Construction, Inc.'s First Amended Third-Party Complaint (Doc. #69) filed August 25, 2021 at 3, but it does not address the fact that the school district also asserted a claim against the general contractor for breach of contract. 112 F. Supp. 3d at 1225. For purposes of the general contractor's claim of implied contractual indemnity against the manufacturer, Judge Rogers permitted the claim to go forward for both the underlying contract and tort claims. Id. at 1227–28.

-14-

Dated this 2nd day of November, 2021 at Kansas City, Kansas.

                                                        s/ Kathryn H. Vratil  
                                                        KATHRYN H. VRATIL  
                                                        United States District Judge